They observed that the cause turned chiefly on the point of alienage
in Mr. Cornell. For this gentleman, having from his birth to the time of his death been always a British subject, and having always lived under the British Government, he owed allegiance to the King of Great Britain, and consequently was never a citizen of this or any (9) other of the United States, nor owed allegiance thereto. For when here, at the time of the transaction aforementioned, he was under the protection of a British flag. That he was therefore, in contemplation of law, as much as alien, and at the time of executing the deed, and, from the time of our independence as much an alien ENEMY, as if we had been a separate and independent nation, for any number of years or ages before the commencement of the war which was then carried on.
That it is the policy of all nations and states that the lands within their government should not be held by foreigners. And therefore it is a general maxim that the allegiance of a person who holds land ought to be as permanent to the government who holds it as the tenure of the soil itself. — That, therefore, by the civil as well as by the common law of England, aliens are incapacitated to hold lands. For that purpose the civil law has made the contracts with aliens void. The law of England, which we have adopted, allows them to purchase, but subjects them to forfeiture immediately; and does not allow an alien ENEMY any political rights at all.
That the premises in question, upon these invariable principles of law, could not from the time our government commenced have been held by Mr. Cornell; because that, in consequence of his owing no allegiance to the State, he had no capacity to hold them, and according to the letter of the law of the land, they must have consequently been forfeited to the sovereignty of the State. That the act of confiscation, in which Mr. Cornell was expressly named, and more particularly the act which especially directed the sale of the very premises in question, must have been at least as effectual in vesting them in the State, as any office found, according to the practice in England can be, for vesting any forfeited property in the King.
That the circumstances and limited privileges of persons who were sent out of this State under a particular act of our General Assembly, *Page 20 
are not applicable to this case. That the case in Vattel, of the majority of the inhabitants of any country deliberately dissolving their old government, and setting up a new one, is neither in reason, nor in the most essential circumstances, anyways similar to this case. That (10) Calvin's case, reported in Coke, does by no means reach the leading and characteristic circumstances of this case.
The jury found a verdict for the defendant.